UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARTHUR REINHOLM, *et al.*,

Plaintiffs,

v.

AMERICAN AIRLINES,

Defendant.

Case No. C07-1429RSL

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant American Airlines ("American"). Plaintiff Arthur Reinholm[1] contends that American, his former employer, interfered with his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* and discriminated against him based on his association with his mentally ill son in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*

---

[1] Katherine Reinholm was named as a plaintiff in this action. However, she has since died, and no one has filed a motion for substitution of a party pursuant to Federal Rule of Civil Procedure 25. Accordingly, Katherine Reinholm's claims are dismissed.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

For the reasons set forth below, the Court grants defendant's motion.

## II. DISCUSSION

**A.  Background Facts.**

Plaintiff began working for defendant in 1988. From January 2004 to the termination of his employment, he worked as the Supervisor Aircraft Maintenance DOT at SeaTac airport. As the only maintenance supervisor at SeaTac, plaintiff was responsible for "the entire maintenance operation in Seattle." Declaration of Arthur Reinholm, (Dkt. #86) ("Reinholm Decl.") at ¶ 3. Plaintiff supervised from sixteen to forty-five aircraft mechanics at various times. Plaintiff was responsible for generating reports on a regular basis, including reports regarding overtime usage, on-the-job injuries, flight delays, and incident-related reports. Plaintiff's immediate supervisor was Aircraft Maintenance Western Region Manager Rich Wood, who in turn reported to John Healy, Managing Director of Line Maintenance for the Western Region. Because of the nature of plaintiff's job, he was on call twenty-four hours a day, seven days a week.

In November 2005, plaintiff was disciplined in writing because some of the employees he supervised had been sleeping on the job. An investigation revealed "that this activity not only happened on the day found, but had been a regular practice." Declaration of Kenneth O'Brien, (Dkt. #82) ("O'Brien Decl."), Ex. B at p. 1. The written discipline stated, "Your inability to effectively supervise the productivity of your workforce and to permit this activity or have complete lack of knowledge falls far below what is expected of a Supervisor and constitutes negligence." Id. The discipline was akin to a last chance agreement. In response, plaintiff signed a Letter of Commitment stating,

> I acknowledge that I have a performance problem, which I fully admit I have not corrected. In consideration for my continued employment with American Airlines, I agree that I will immediately correct my performance problem by complying with all Company Rules and Regulations, as well as maintaining a satisfactory work

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

performance record in all respects.  Moreover, I understand that if I do not correct my performance problem, I will be discharged without further warning.

Id. at p. 3.

Around September 8, 2006, Healy spoke with plaintiff about the "perception that he was letting things slip and not communicating with the Station." Declaration of Ryan Hammond, (Dkt. #84) ("Hammond Decl."), Ex. C.  Plaintiff told Healy about "his familial problems and woes," and admitted that those issues might be distracting him from work.  Id.  Healy suggested that plaintiff consider looking into the company's Employee Assistance Program ("EAP") and/or taking FMLA time off.  When Healy relayed the substance of the conversation to Wood, Wood replied that he was already aware of plaintiff's family "dramas" and "would agree that it is sometimes distracting him from his work."  Id.  Wood explained that he had previously suggested that plaintiff "look[] into EAP or FMLA if either applied."  Id.  Specifically, plaintiff's son, who plaintiff and his wife adopted at a young age, was diagnosed with behavioral and psychological problems related to his biological mother's use of illegal drugs during her pregnancy.  The problems manifested themselves in aggressive behavior, destruction of some of plaintiff's property, and legal troubles.

On September 25, 2006, plaintiff sent an e-mail to Wood and Healy informing them that he had transmitted FMLA forms to his children's physician, and American could expect to receive them later that day.  The e-mail stated,

> Start 20-Sept, I do not expect this to be continuous and can engage short term coverage 24/7.  I will cover all scheduled conference calls or make arrangements with other supv's if that became [sic] impossible.  I will cover all of my usual duties with the only exception – not being onsite at the airport full time.

Declaration of Joanne Gonzalez, (Dkt. #83) ("Gonzalez Decl."), Ex. A.  The physician stated that plaintiff's son needed assistance with "transportation, supervision, guidance,

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

meals, and hygiene," and that plaintiff's assistance was needed for his son's "basic medical, hygiene, nutritional needs, safety, or transportation." Declaration of Patrick McGuigan, (Dkt. #87) ("McGuigan Decl."), Ex. 9 of Ex. B. Plaintiff stated that he would need to be away from work for "up to 2/3 days" per week. O'Brien Decl., Ex. B at p. 4. His request for intermittent FMLA leave was approved on October 26, 2006 with a retroactive effective date of October 15, 2006.

On October 25, 2006, Wood discussed with plaintiff his failure to submit reports and other paperwork in a timely manner. According to Wood, plaintiff committed "to be on time with reports and audits, and with submitting any required paperwork that had deadlines." O'Brien Decl., Ex. B at p. 21.

On December 12, 2006, plaintiff was discharged for an incident involving yelling between him and one of his mechanics, for failing to submit timely reports, failing to comply with the weekly timecard requirement, a recent delay that impacted passengers and increased costs, and for missing the two most recent supervisors' conference calls. O'Brien Decl., Ex. B at p. 20 (termination letter stating that management "lost confidence that you can carry out your job assignment. Your performance falls far short of what the Company expects from its employees but especially from management who is held to a higher standard."). The termination letter also referenced the prior year's discipline and plaintiff's failure to correct his performance. In response, plaintiff wrote, "I do not deny the specific report or conference item missed." Id. at p. 22. He stated that the cause of his "under-performance" was related to the issues with his son. Specifically, plaintiff stated that his son was placed in custody for a felony on November 14, 2006 and remained incarcerated until the end of plaintiff's employment. In the intervening month, plaintiff had been modifying his residence to increase security. Once those efforts were

completed, he anticipated being able to complete his work in a timely manner.

In addition to his FMLA and ADA claims, plaintiff also claimed that defendant discriminated against him based on his age, violated his civil rights under 42 U.S.C. § 1981, and discharged him in violation of the public policy of Washington. Plaintiff does not oppose defendant's request to dismiss his claims for age discrimination and for violations of Section 1981 and Washington's public policy. Therefore, those claims are dismissed.

**B.     Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

## C. FMLA Claim.

Plaintiff contends that defendant interfered with his FMLA rights by failing to inform him of his rights, discouraging him from taking leave, and discharging him because he took FMLA leave. It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1). Pursuant to the FMLA's implementing regulations, "interference" includes "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). Employers are forbidden from using the taking of FMLA leave "as a negative factor in employment actions," including discipline and termination. 29 C.F.R. § 825.220(c). To prevail on his interference claim, plaintiff "need only prove by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate" his employment. Bachelder v. America W. Airlines, 259 F.3d 1112, 1125 (9th Cir. 2001) (explaining that an employee can prove the claim using direct or circumstantial evidence, or both).

Plaintiff's contention that defendant failed to inform him of his rights and discouraged him from using FMLA leave is undermined by the fact that his supervisors encouraged him to consider FMLA leave. Cf. Liu v. Amway Corp., 347 F.3d 1125, 1134 (9th Cir. 2003) (explaining that a supervisor had discouraged an employee from using FMLA leave by denying her requests for extensions of her leave and pressuring her to reduce her leave time). They referred him to the "JetNet," American's intranet site where all of the relevant policies were located. Despite plaintiff's contention that defendant never informed him of his FMLA entitlements, that information is clearly set forth in the FMLA policies on JetNet. Supplemental Declaration of Joanne Gonzalez, (Dkt. #89), Ex. B. In fact, plaintiff located the policies: "I was referred to the internet, to the JetNet, it

was all there." Reinholm Dep. at p. 108. Plaintiff was explicitly informed that his request for leave had been approved and given a Letter of Understanding specifically addressing his leave. Supplemental Declaration of Ryan Hammond, (Dkt. #90), Ex. D. Plaintiff has failed to show that he was not provided with all relevant information about his leave and his FMLA rights.

Moreover, plaintiff's claim that he was discharged for taking FMLA leave is fatally undermined by the fact that he never actually took any FMLA leave. Plaintiff only informed Wood on one occasion that he planned to use FMLA leave; plaintiff stated that he would use the leave "to fix things up around the house while [his] son was in custody." Reinholm Dep. at p. 122;[2] Reinholm Decl. at ¶ 23. Making home repairs under these circumstances is not "care" as contemplated by the FMLA. Marchisheck v. San Mateo County, 199 F.3d 1068, 1076 (9th Cir. 1999) (explaining that the applicable regulation includes two examples of "caring for" a family member: "(1) [W]here . . . 'the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor'; and (2) 'providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care'") (quoting

---

[2] In his declaration, plaintiff stated, "On a number of occasions via email, I provided Wood advance notice of using FMLA leave to care for my son, as well as notice after I spent time caring for my son." Reinholm Decl. at ¶ 19. Plaintiff does not augment that vague assertion with any details such as the dates he used FMLA leave, the nature of the care he provided during the leave, or the supporting e-mails. Moreover, the assertion is contradicted by his deposition testimony in which he stated that he did not notify Wood in advance of using FMLA leave, and could recall only one incidence when he used FMLA leave: when he repaired his home during his son's incarceration. Reinholm Dep. at pp. 122-23; Orr v. Bank of Am., 285 F.3d 764, 780 n.28 (9th Cir. 2002 (explaining that a party cannot create an issue of fact through affidavits that contradict his own sworn deposition testimony).

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7

29 C.F.R. § 825.116(a)). Although there are a myriad of "family" issues which might impact an employee's job performance, not all of those issues are covered by the FMLA. Accordingly, plaintiff has not shown that he was discharged for using FMLA leave because he never did so.

Plaintiff contends that he was deterred from taking FMLA leave because his job required him to be on call twenty-four hours a day, seven days a week. However, plaintiff has never identified any specific dates and circumstances when he needed, but was deterred from taking, FMLA leave. He never requested any assistance covering his duties, even though he was a supervisor himself, and as the e-mail traffic shows, he had a very open relationship with Wood. When Wood offered assistance, plaintiff declined it. O'Brien Decl., Ex. B at p. 24; Reinholm Dep. at pp. 296-97. In fact, plaintiff explicitly stated that he anticipated being able to complete all of his duties except for being on-site at the airport full time. Gonzalez Decl., Ex. A. Plaintiff does not allege that he was subsequently told or required to be at the airport full time.

Despite plaintiff's assurance that he could cover his usual duties, plaintiff faults defendant for failing to reassign him or some of his duties to facilitate his use of leave. Plaintiff never requested those changes. He also told Wood that he did not plan to use the leave. McGuigan Decl., Ex. 4 of Ex. B (September 11, 2006 e-mail from plaintiff to Wood stating, "will file FMLA – not planning to use – but will provide some cover if things go out of control."). Also, an employer could violate the FMLA by unilaterally reassigning employees and/or duties based simply on a request for FMLA leave. In fact, this Court recently held a trial in a case in which a plaintiff claimed her employer violated the FMLA and ADA for taking similar action. French v. Providence Everett Medical Center, C07-217RSL (W.D. Wash. 2009). In addition to stating that he did not plan to

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8

use the leave, plaintiff never requested a transfer or reassignment of any of his duties. In light of those facts, defendant cannot be liable for failing to unilaterally reassign plaintiff and/or his job duties.

Plaintiff also contends that he was discouraged from using FMLA leave because defendant required him to "commit to a set schedule instead of allowing him to freely exercise his FMLA rights."[3] Plaintiff's Response at p. 20. In the e-mail to which plaintiff refers, Wood sought to know if plaintiff planned to work a five-day work week *"minus any FLMA issues that may arise*, + two days off per week." O'Brien Decl., Ex. B at p. 26 (emphasis added). In fact, Healy sought "some idea" of when plaintiff planned to be out so that he could arrange coverage for plaintiff's duties during any absences. McGuigan Decl., Ex. 14 of Ex. B; Healy Dep. at p. 66;[4] Healy Dep. at p. 107 (Healy "really wanted to work with Art to find out when he felt he would be at work so we could come up with the best solution"); Wood Dep. at pp. 114-15 (explaining that he created contingency plans in case plaintiff used FMLA leave, but he was waiting to implement them until plaintiff requested time off). Defendant's attempt to learn when plaintiff might need coverage was reasonable in light of the fact that they would have to fly in another supervisor from another location. In addition, at the time defendant requested

---

[3] Plaintiff also contends that an e-mail Gonzalez sent to Wood discouraged him from taking FMLA leave because it implied that working from home was not desirable. McGuigan Decl., Ex. 3 of Ex. B (suggesting that rather than working from home, plaintiff should "separate the personal time from his professional time"). There is no evidence that plaintiff ever saw the e-mail. Regardless, discouraging *working* from home does not equate to discouraging FMLA *leave*.

[4] In fact, plaintiff responded to the request with a tentative schedule, and Wood stated, "Just let me know if this changes, either times and/or planned days off," which belies plaintiff's assertion that defendant denied him the flexibility he claims he needed. O'Brien Decl., Ex. B at p. 26.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9

information on the schedule plaintiff planned to work, plaintiff's son was already incarcerated, which continued for the duration of plaintiff's employment. Defendant's request could not have discouraged plaintiff from taking leave to care for his son because plaintiff could not have provided any care during the incarceration. Moreover, plaintiff was approved for intermittent FMLA leave for a one-year term. Based on that extended time frame and plaintiff's assurances, it was reasonable for plaintiff's supervisors to assume plaintiff would notify them when he needed to use the leave. Wood Dep. at p. 129-30 (explaining that he assumed plaintiff would request leave when he needed it, and he would have granted a request if made). In fact, defendant's written policy, which plaintiff received, explicitly required plaintiff to notify his supervisor in advance of using the leave or no later than two days after returning from leave. O'Brien Decl., Ex. B at p. 12 ("In no case shall intermittent or reduced-schedule FMLA Leave be given retroactively if you did not provide notice within 2 calendar days after returning to work."). In signing the application, plaintiff acknowledged that he received, read, and understood the notice requirements. Id. at p. 16. Despite that requirement, plaintiff never kept a record of his use of FMLA leave or notified Wood after he used any such leave. Accordingly, defendant is entitled to summary judgment on plaintiff's claims that he was discouraged from using FMLA leave and discharged for using the leave.

Plaintiff does not explicitly argue that he was discharged because he requested FMLA leave or to prevent him from using that leave. Even if plaintiff's allegations were construed to include such claims, he has not shown that he was discharged for those reasons. In fact, plaintiff did not convey any intent to use FMLA leave in the future. Furthermore, the record shows that plaintiff was discharged for on-going performance concerns. He had been disciplined for neglecting his duties in 2005, and those problems

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 10

persisted in 2006.  Plaintiff admits that he engaged in the actions for which he was discharged.  Reinholm Decl. at ¶ 23 (stating that he was absent from work while "fixing up [his] home" causing an airplane delay and a significant customer service issue).  Plaintiff acknowledged that he missed the two most recent supervisors' conference calls as stated in his termination notice.  Reinholm Dep. at pp. 196-97 (explaining that he missed one call because he fell asleep, and missed the second because he overslept).  He also acknowledged that some of his reports were submitted late.  Reinholm Dep. at pp. 135, 296; see also Ex. 13 (describing his own "under-performance").  This is not a case where plaintiff failed to perform his duties while using FMLA leave.  Instead, plaintiff chose not to use FMLA leave.  The law does not require defendant to ignore plaintiff's performance problems despite that decision.  Nor was defendant required to force him to take FMLA leave.  For all of these reasons, defendant is entitled to summary judgment on plaintiff's FMLA claim.

**D.     ADA Claim.**

Plaintiff contends that defendant discriminated against him in violation of the ADA by discharging him because of his association with his disabled son.  In order to establish a prima facie case of discrimination based on association under the ADA, plaintiff must show: (1) he was qualified for the job at the time of the adverse employment action, (2) he was subjected to an adverse employment action, (3) at the time, his employer knew that he had a relationship or association with a disabled person, and (4) the adverse action occurred under circumstances raising a reasonable inference that the disability of the third party was a determining factor in the employer's decision.  See, e.g., Den Hertog v. Wasatch Acad., 129 F.3d 1076 (10th Cir. 1997).  Even assuming that plaintiff's son was "disabled" for purposes of the ADA and that his supervisors were

aware of it, plaintiff must show more than a knowledge of the disability to overcome a motion for summary judgment. See, e.g., Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 760 (5th Cir. 1996) (granting summary judgment when employee's only evidence of association discrimination was knowledge of the disability). There is no evidence of any animus towards disabled people in general or towards plaintiff's son. As set forth above, plaintiff had on-going performance problems around the time of his discharge which show that he was not performing to defendant's expectations. Accordingly, his ADA claim fails.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. #81). The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 15th day of May, 2009.

Robert S. Lasnik
United States District Judge